IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NARMER GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-cv-1477 |
| ) | |
| PAUL MEAGHER, a Chicago Police Officer, ) | Judge Robert M. Dow, Jr. |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Narmer Griffin filed a four-count amended complaint [17] on July 27, 2009, alleging violations of state and federal law by Defendants Paul Meagher, six "John Doe" officers, and the City of Chicago. The Court has before it Defendant Meagher's motion to dismiss Counts I-III [33] as well as Defendant City of Chicago's motion to dismiss Counts III and IV [37]. For the reasons stated below, the Court grants in part and denies in part Defendant Meagher's motion to dismiss and denies Defendant City of Chicago's motion to dismiss.

**I.    Background**

**A.    Procedural History**

On March 9, 2009, while incarcerated at Stateville Correctional Center, Plaintiff filed a *pro se* complaint and a motion for appointment of counsel. On March 26, the Court granted Plaintiff's motion for appointment of counsel and dismissed *sua sponte* the *pro se* complaint without prejudice, giving appointed counsel leave to file an amended complaint consistent with counsel's obligations under Federal Rule of Civil Procedure 11. On July 27, Plaintiff filed a four-count amended complaint, naming Paul Meagher, the City of Chicago, and six unknown officers as Defendants. Counts I and II allege § 1983 excessive force and due process claims

against Defendants Meagher and the unknown officers. Count III alleges a common law battery claim against all Defendants, and Count IV alleges an indemnification claim pursuant to 745 ILCS 10/9-102 against the City of Chicago.

## B. Factual Background[1]

At approximately 10:30 a.m. on June 1, 2008, Plaintiff was arrested and transferred to the Area Two Chicago Police Station at 727 East 111th Street. Plaintiff was placed in an interview room with a wall-mounted camera and his right hand was handcuffed to a wall restraint. According to Plaintiff, the handcuff was too tight, causing him severe pain and loss of feeling in his wrist and hand. When he yelled out in pain, Defendant John Doe #1 entered the interview room, ignored his request to loosen the handcuffs, and told Plaintiff to stop yelling. John Doe #1 returned to the interview room with Defendant Meagher and informed Plaintiff that he was being transferred downstairs to the Fifth District lock-up because he would not stop yelling. John Doe #1 and Meagher uncuffed Plaintiff's right hand and, according to Plaintiff, without provocation began stepping on and smashing Plaintiff's shoeless feet and twisting his arms. In order to protect himself, Plaintiff alleges that he tried to curl up in a fetal position, but Meagher and John Doe #1 threw him to the ground and repeatedly punched, kicked, and kneed Plaintiff. According to Plaintiff, Defendant John Does #2-6 then entered the interview room and joined in kicking, kneeing, punching, and stomping on Plaintiff. Defendant Officers, using force, cuffed Plaintiff's hands behind his back, shackled his legs, and dragged Plaintiff down a set of metal stairs to a holding cell.

According to Plaintiff, once Defendant Officers placed him in the holding cell, they ignored his cries for medical attention. Eventually, Plaintiff was taken to South Shore Hospital,

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

where he was diagnosed with contusions, given pain medication, and referred for follow-up care. Plaintiff then was returned to the 5th District for further processing. According to Plaintiff, on several occasions after the incident, he received dental treatment at the Stateville Correctional Center for conditions caused or exacerbated by Defendant Officers.

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all

reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Discussion**

   **A.    § 1983 Claims Against Defendants Meagher and John Doe Officers**

To state a claim for relief in an action brought under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); see also *Garfield v. Cook County*, 2009 WL 4015553, at *3 (N.D. Ill. 2009). Plaintiff brings § 1983 claims pursuant to the Fourth and Fourteenth Amendments. All of Plaintiff's claims are against persons or entities acting under color of law.

   *1.    Excessive Force Claim*

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (citations and quotation marks omitted). This "reasonableness" analysis is "not capable of precise definition or mechanical application." *Id.* To determine whether the force used to effect a seizure is unreasonable, the Court must examine the "totality of the circumstances" surrounding the incident. *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592 (7th Cir. 1997). "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" are specific factors for courts to consider. *Graham,* 490 U.S. at 396 (citation omitted). Importantly, all of these facts and circumstances "must be judged

4

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* While the right to make an arrest carries with it the right to use some degree of force, "police officers do not have the right to shove, push, or otherwise assault innocent people without any provocation whatsoever." *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997) (internal quotations omitted). Plaintiff alleges that Defendants Meagher and John Doe Officers handcuffed him too tightly, causing severe pain and loss of feeling in his hand and wrist, and beat him during his processing. Defendant Meagher argues that Plaintiff's claims are so improbable that they are not facially plausible. See *Iqbal,* 129 S.Ct. at 1940.

Plaintiff and Defendants have materially different opinions regarding the propriety of any force used by the police. Defendants insist that they must be given reasonable latitude in performing their duties, while Plaintiff alleges that Defendant Officers used force without provocation, that he was roughed up, and that certain hospital records support his claim. The Court finds that the escalation of a prison official-prisoner disagreement into violence is not so improbable that Plaintiff's claims should be dismissed. If Plaintiff's version of events is correct, he could have a winning excessive force claim. The Court must credit his version of events at this stage, and so dismissal of the excessive force claim is not appropriate.

    2.    *Due Process Claim*

In Count II, Plaintiff also claims that Defendants "caused [him] to be deprived of his liberty without due process of law." Because the Fourth Amendment provides an explicit constitutional protection and an elucidated standard from which to analyze Plaintiff's claims of excessive force, the Court considers, in the absence of any briefing from the parties on this issue, whether Plaintiff is barred from bringing the same claims under the more general notion of

5

substantive due process.[2] In *Graham v. Connor,* 490 U.S. 386 (1989), the Supreme Court held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 395. The Supreme Court has further clarified the holding in *Graham* on several occasions. In *United States v. Lanier,* the Court held that *Graham* requires analysis of a claim under the standard appropriate to the specific governing provision and not under the rubric of substantive due process. 520 U.S. 259, 272, n.7 (1997); see also *Chavez v. Martinez,* 538 U.S. 760, 773, n.5 (2003) (explaining that *Graham* has been interpreted to "foreclose the use of substantive due process analysis in claims involving the use of excessive force in effecting an arrest * * * such claims are governed solely by the Fourth Amendment"); *Jewett v. Anders,* 521 F.3d 818, 827, n. 9 (7th Cir. 2008) ("The Supreme Court has cautioned that a substantive due process claim may not be maintained where a specific constitutional provision protects the right allegedly violated – in this case, the Fourth Amendment"); *Lester v. City of Chicago*, 830 F.2d 706, 710 (7th Cir. 1987) (concluding that "the proper standard for analyzing excessive force in arrest claims is a Fourth Amendment standard, and not a Fourteenth Amendment substantive due process standard).

Both the Supreme Court and Seventh Circuit have held that excessive-force claims brought under § 1983 rely on the Fourth Amendment and its objective reasonableness standard, dispensing of and dismissing such claims brought under the substantive due process rubric. See

---

[2] Although Plaintiff's complaint does not indicate whether the focus of his due process claim is deprivation of procedural or substantive due process, Plaintiff has failed to set forth sufficient allegations to support a procedural due process claim. Thus, the Court construes his claim as alleging a deprivation of substantive due process.

6

*Jentsch v. Village of Lynwood*, 2008 WL 4790389, at *1-2 (N.D. Ill. Oct. 28, 2008). Accordingly, Plaintiff's due process claim is dismissed without prejudice.

### B. Battery Claim Against All Defendants

Defendants first contend that Plaintiff's common law battery claim is barred by the statute of limitations. In Illinois, the pertinent limitations provision requires a would-be plaintiff to bring suit for personal injury torts within two years of a cause of action's accrual. 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). However, Illinois local governmental entities and their employees benefit from a one-year statute of limitations for "civil actions" against them. 745 Ill. Comp. Stat. 10/8-101 ("No civil action * * * may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued"). While a two-year period still applies to § 1983 claims against such defendants, the one-year period applies to state-law claims that are joined with a § 1983 claim. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Thus, in this case, Plaintiff's excessive force § 1983 claim is subject to the two-year statute of limitations, but his state law claim for battery is subject to a one-year statute of limitations.

In both his original *pro se* complaint and his amended complaint, Plaintiff alleges that he was beaten on June 1, 2008. Plaintiff filed his original complaint, naming Defendant Meagher and Defendant City of Chicago, on March 9, 2009, well within the one-year statute of limitations that began running in June 2008. On March 26, this Court *sua sponte* dismissed his *pro se* complaint without prejudice, appointed counsel for Plaintiff, and instructed appointed counsel to investigate Plaintiff's allegations and, if warranted, file an amended complaint. Plaintiff filed his amended complaint on July 27, 2009.

7

Contrary to Defendants' argument, the fact that this Court subsequently dismissed without prejudice Plaintiff's first complaint does not render the amended complaint, filed on July 27, 2009, untimely. Rather, Federal Rule of Civil Procedure 15(c)(1) provides that an amendment of a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Defendants do not dispute that Plaintiff's amended complaint arose out of the same conduct dealt with in Plaintiff's original complaint. Thus, Plaintiff's amended complaint relates back to March 2009, when his original complaint was timely filed.

*Elmore v. Henderson,* 227 F.3d 1009 (7th Cir. 2000), on which Defendants rely, does not compel a contrary conclusion. In *Elmore,* the Seventh Circuit held that "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." *Id.* at 1011. *Elmore* is inapposite, however, because the instant suit has never been dismissed, with or without prejudice. See, *e.g.*, *Seals v. Compendia Media Group*, 290 F.Supp.2d 947, 952 (N.D. Ill. 2003). Rather, only Plaintiff's complaint was dismissed. Thus, the Court concludes that Plaintiff's amended complaint was timely filed.

Defendants also argue that Plaintiff's allegations are insufficient to state a claim for battery. "Under Illinois law, battery is the unauthorized touching of another that offends a reasonable sense of personal dignity." *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008). To state a claim for battery under Illinois law, Plaintiff must allege that Defendant Officers intended to cause a harmful contact, that harmful contact resulted, and that Plaintiff did not consent. *Happel v. Wal-Mart Stores, Inc*., 319 F. Supp. 2d 883, 885 (N.D. Ill. 2004) (citing

*Cohen v. Smith*, 648 N.E.2d 329, 332 (1995)). Plaintiff alleges that Defendant Officers intentionally and deliberately stepped on and smashed his shoeless feet, shoved him into a wall, bent and twisted his arms, threw him to the ground, punched and kicked him, kneed him in the neck and back while other officers tightly cuffed his wrists and shackled his leg, and dragged him down a set of metal stairs. He further alleges that the actions of Defendant Officers were unprovoked and unjustified. Clearly, Plaintiff's allegations are sufficient to state a claim against for battery against Defendant Officers. See, *e.g.*, *Stewart v. Roe*, 776 F. Supp. 1304, 1308 (N.D. Ill. 1991). And Defendant City of Chicago makes no argument that the Defendant Officers' conduct fell outside the scope of their employment. Because the City remains liable for battery under the theory of respondeat superior, Defendants' motions are denied as to Count III.

### C. Indemnification Claim

Count IV is a statutory indemnification claim based on 745 ILCS 10/9-102, which provides in relevant part:

> A local public entity is empowered and directed to pay any court judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the matter provided in this Article.

Section 10/9-102 makes local municipalities, such as the City of Chicago, liable for the payment of any tort judgments incurred in its own name, as well as any tort judgment entered against one of its employees as long as the employee was acting within the scope of his employment. See *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1484 (7th Cir. 1988) (citing *Estate of Ahmed v. Cook County*, 497 N.E.2d 346, 347-48 (Ill. App. Ct. 1st Dist. 1986) (reversed on other grounds).

Defendant City of Chicago argues that Plaintiff's indemnification claim is premature. Contrary to the City's assertions, the majority of courts that have considered the issue have

determined that there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim under § 10/9-102 before his actions against municipal employees are final. See, *e.g.*, *Wilson v. City of Chicago*, 120 F.3d 681, 684-85 (7th Cir. 1997) (recognizing that there is no benefit in requiring a plaintiff to initiate a separate proceeding at a later date); *Cobige v. City of Chicago*, 2009 WL 2413798, at *1 n.2 (N.D. Ill. Aug. 6, 2008) (refusing to dismiss the City of Chicago from a § 1983 claim because it was a possible indemnitor of individual defendants under § 10/9-102); *Blancas v. Village of Rosemont*, 2008 WL 4682217, at *2-3 (N.D. Ill. May 21, 2008) (collecting cases and stating that "there is a wealth of authority" against dismissing a § 10/9-102 claim as premature); *Malden v. City of Waukegan*, 2004 WL 2331839, at *4 (N.D. Ill. Oct. 14, 2004) ("[A] plaintiff is entitled to bring an indemnification claim against the municipality before a judgment is final against its employees"). Consistent with the Seventh Circuit's decision in *Wilso*n and the approach taken by the majority of courts to have considered the issue, the Court declines to dismiss Plaintiff's § 10/9-102 claim as premature.[3]

---

[3] Defendant City of Chicago also argues that Plaintiff's indemnity claim attempts to circumvent the limits on municipal liability for § 1983 claims. The 1990 case that the City cites in support of this argument predates the Seventh Circuit's 1997 decision in *Wilson v. City of Chicago,* 120 F.3d at 684-85, and 1998 decision in *Yang v. City of Chicago*, 137 F.3d 522 (7th Cir. 1998), both of which clearly hold that a § 1983 plaintiff may bring a claim for indemnity under § 10/9-102. Because (1) the City of Chicago was a defendant in both of those actions and (2) Plaintiff cited both cases in his response, Defendant should have been well aware that this argument was groundless.

### III. Conclusion

For these reasons, Defendant Meagher's motion to dismiss is granted as Count II and denied as to the remaining counts, and Defendant City of Chicago's motion to dismiss is denied as to all counts.

Dated: December 21, 2009                _____
                                                         Robert M. Dow, Jr.
                                                         United States District Judge